**STATE of Utah, Plaintiff and Appellee,**

v.

**James QUADA, Defendant and Appellant.**

**No. 950076–CA.**

Court of Appeals of Utah.

May 31, 1996.

---

Thomas H. Means, Provo, for Appellant.

Jan Graham and James H. Beadles, Salt Lake City, and Claudia Laycock, Provo, for Appellee.

Before ORME, GREENWOOD and WILKINS, JJ.

## OPINION

ORME, Presiding Judge:

Claiming he acted lawfully in the course of making a citizen's arrest, defendant James C. Quada appeals his conviction for two counts of aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76–5–103 (1995).[1] We affirm.

---

1. Section 76–5–103 was amended slightly in 1995. However, the amendments have no effect on the outcome of this case. *See* 1995 Laws of Utah, ch. 291, § 5.

## FACTS

■ "We recite the facts in the light most favorable to the jury's verdict." *State v. Cosey,* 873 P.2d 1177, 1178 (Utah App.), *cert. denied,* 883 P.2d 1359 (Utah 1994). *Accord State v. Hamilton,* 827 P.2d 232, 233 (Utah 1992).

On September 1, 1994, at approximately 5:30 p.m., defendant was sleeping when he was awakened by the sound of birdshot hitting the siding of his residence. Defendant grabbed his .22 caliber semi-automatic rifle and went outside to investigate. When he got outside, he saw a person, approximately 100 to 150 yards off, walking away. The person, later identified as Bridger Kummer, was carrying a gun.

Defendant hollered several times at Bridger, but Bridger, who had heard nothing, did not respond. Defendant then aimed his gun, sighting off 15 feet from where Bridger was walking, and fired two shots. One shot passed by Bridger's head, sounding to him like a bee. The other shot hit the ground, approximately two arm-lengths away from where Bridger was walking. Bridger turned and saw defendant pointing a gun at him. Defendant then told Bridger to put his hands over his head and come toward him.

Hearing defendant's gun shots and shouting, Gary Kummer, Bridger's father and a member of the same hunting party, looked over from where he was and saw Bridger with his hands in the air, walking toward a barn. At about that time, defendant noticed Gary and three young boys. Defendant instructed Gary to come toward him along with Bridger. Meanwhile, the three boys ran off to call for help. Bridger and Gary, with their hands in the air, proceeded to approach defendant, who continued pointing his gun at them.

Gary asked to call the sheriff, which defendant permitted. After Gary called the sheriff, defendant, while still pointing his gun at Bridger and Gary, directed them to walk down the driveway. While the Kummers awaited the arrival of peace officers, defen-

dant went inside to get dressed. When he came back out, defendant put his gun behind the garage under a piece of plastic and waited for the sheriff to arrive. When the sheriff and other officers arrived, they arrested defendant.

The State charged defendant with two counts of aggravated assault and the case proceeded to trial. The jury convicted defendant on both counts. Defendant appeals.

## ISSUES FOR APPEAL

Defendant presents numerous issues on appeal. However, we address only three.[2] First, defendant claims the trial court erred in not allowing a jury instruction on what he contends is the lesser included offense of "threatening with or using [a] dangerous weapon in [a] fight or quarrel," as set forth in Utah Code Ann. § 76–10–506 (1995). Second, defendant asserts the trial court erred in not instructing the jury on the defense of lawful citizen's arrest, in accordance with Utah Code Ann. § 77–7–3 (1995). Finally, defendant claims the evidence presented at trial was insufficient to convict him on two counts of aggravated assault.

## LESSER INCLUDED OFFENSE INSTRUCTION

■ Contending it is a lesser included offense of aggravated assault, defendant requested the trial court to instruct the jury on the offense of threatening with a dangerous weapon, an offense proscribed by Utah Code Ann. § 76–10–506 (1995). The trial court refused to so instruct the jury. Defendant was subsequently convicted on two counts of aggravated assault. A trial court's refusal to give a jury instruction presents a question of law, which we review for correctness, giving no particular deference to the trial court. *State v. Hamilton,* 827 P.2d 232, 238 (Utah 1992).

■ Before an instruction on a lesser included offense can properly be given, the trial court must conduct a two-part analysis. First, the court should compare the statutory

---

2. Defendant raises twelve additional issues. These issues are without merit and we decline to address them further. *See, e.g., State v. Vigil,* 840

P.2d 788, 795 (Utah App.1992), *cert. denied,* 857 P.2d 948 (Utah 1993).

elements of the two crimes and determine whether there are any overlapping elements. *State v. Baker,* 671 P.2d 152, 159 (Utah 1983). Next, it should evaluate the evidence to determine if there is a rational basis for a verdict acquitting the defendant of the offense charged while convicting him of the alternative offense. *Id.* If both parts are satisfied, the trial court must provide the jury with an instruction on the lesser included offense. *Id.*

The elements of aggravated assault are contained in Utah Code Ann. § 76–5–103 (1995), which provides, in pertinent part, as follows:

(1) A person commits aggravated assault if he commits assault defined in Section 76–5–102 and he:

(a) intentionally causes serious bodily injury to another; or

(b) under circumstances not amounting to a violation of Subsection (1)(a), uses a dangerous weapon as defined in Section 76–1–601 or other means or force likely to produce death or serious bodily injury.

The referenced offense of "assault" is defined, in pertinent part, in these terms:

(1) Assault is:

(a) an attempt, with unlawful force or violence, to do bodily injury to another;

(b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or

(c) an act, committed with unlawful force or violence, that causes or creates a substantial risk of bodily injury to another.

Utah Code Ann. § 76–5–102 (1995).

The elements of threatening with a dangerous weapon are contained in Utah Code Ann. § 76–10–506 (1995), which provides:

Every person, except those persons described in Section 76–10–503, who, not in necessary self defense in the presence of two or more persons, draws or exhibits any dangerous weapon in an angry and threatening manner or unlawfully uses the same in any fight or quarrel is guilty of a class A misdemeanor.

■ In this case, in order for the trial court to instruct the jury of this offense as a lesser included offense, there must have been a rational basis for a verdict acquitting defendant of aggravated assault and convicting him of threatening with a dangerous weapon. *See Baker,* 671 P.2d at 159. Here, defendant admitted to firing his gun twice—he did not merely "draw[ ] or exhibit[ ]" it. Moreover, at the time defendant discharged the weapon, he was not a party to "any fight or quarrel" nor acting "in necessary self defense." These facts take defendant's conduct out of section 76–10–506 and require us to conclude that a rational basis does not exist for a verdict convicting defendant of the offense of threatening with a dangerous weapon. Accordingly, the trial court did not err in refusing defendant's request for this lesser included offense instruction.[3]

## CITIZEN'S ARREST INSTRUCTION

■ Defendant also complains that the trial court erred in refusing to give a jury instruction on citizen's arrest.[4] Defendant claims he was making a lawful citizen's arrest when he committed the acts that later caused him to be convicted on two counts of aggravated assault. Specifically, defendant argues that Bridger Kummer violated Utah Code Ann. § 23–20–32 (1994), under which it was unlawful for any person to discharge any kind of dangerous weapon or firearm within 600 feet of a house or dwelling without writ-

---

**3.** Because we hold there is no rational basis for a verdict acquitting the defendant of aggravated assault and convicting him of threatening with a dangerous weapon, we need not reach the issue of whether there are overlapping statutory elements between sections 76–5–103 and 76–10–506.

**4.** Defendant's proposed jury instruction, rejected by the court, provides:

A private person may arrest another for a public offense committed or attempted in his presence or when a felony has been committed and he has reasonable cause to believe the person arrested has committed it.

The requested instruction represented, at best, an incomplete statement of the law because it omitted any explanation that only non-deadly force may be used in making a citizen's arrest. *See* Utah Code Ann. § 76–2–403 (1994).

ten permission of the owner.[5] However, we need not reach the merits of defendant's claim regarding this instruction because we conclude that any error in refusing to give the requested instruction was harmless and did not affect the substantial rights of defendant. *See* Utah R.Crim. P. 19, 30.

Utah Code Ann. § 77–7–3 (1995) recognizes the right of a private person to make a citizen's arrest in narrowly defined circumstances.[6] However, even if defendant was justified in effecting a citizen's arrest, he may only use the force allowable by law to make the arrest. Utah Code Ann. § 76–2–403 (1995) provides, with our emphasis, that "[a]ny person is justified in using any force, *except deadly force,* which he reasonably believes to be necessary to effect an arrest or to defend himself or another from bodily harm while making an arrest."

When the jury returned a verdict finding defendant guilty on two counts of aggravated assault, it necessarily found that one of the aggravation requirements set forth in section 76–5–103 was satisfied. To convict in this case, the jury had to find that defendant used a dangerous weapon likely to produce death or serious bodily injury as set forth in section 76–5–103(1)(b). Thus, by finding defendant guilty of aggravated assault, the jury necessarily concluded that defendant had used "deadly force."[7] As a result, the jury, if *properly* instructed on citizen's arrest, *see* note 4, could not have found that defendant had made a lawful citizen's arrest. Accordingly, any error in refusing to provide defendant's requested jury instruction was harmless and did not affect his substantial rights.

## INSUFFICIENT EVIDENCE

■ Finally, defendant argues that the evidence presented at trial was insufficient to convict him on two counts of aggravated assault. When reviewing the sufficiency of the evidence supporting a conviction, we will reverse the conviction only when the evidence, viewed in the light most favorable to the verdict, "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *State v. Marcum,* 750 P.2d 599, 601 (Utah 1988).

One way that the State could convict a defendant of aggravated assault is to prove that he or she committed an assault as defined in Utah Code Ann. § 76–5–102 (1995) and that, in doing so, he or she "use[d] a dangerous weapon ... or other means or force likely to produce death or serious bodily injury." Utah Code Ann. § 76–5–103(1)(b) (1995). The record reveals sufficient evidence to support defendant's conviction, on this basis, on two counts of aggravated assault.

■ It is undisputed that defendant intentionally fired his gun two times in the direction of Bridger Kummer. Bridger testified that one shot passed by his head, "sound[ing] like a bee," while the other hit the ground nearby. When Bridger turned toward the direction of the shots, he saw defendant pointing an obviously operational firearm at him. Moreover, defendant kept his loaded gun pointed at Bridger as he approached with his hands in the air. Similarly, while not firing any shots in the direction of Gary, defendant pointed his loaded gun at him the entire time he approached defendant. In addition, after Gary called the sheriff, defendant kept his loaded gun pointed in the direction of the Kummers as they walked down the driveway. Based upon the

5. Section 23–20–32, in effect at the time of the relevant incident, has since been repealed. *See* 1995 Laws of Utah, ch. 178, § 7. A similar provision now appears in Utah Code Ann. § 76–10–508 (1995).

6. Utah Code Ann. § 77–7–3 (1995) provides:

A private person may arrest another:
(1) For a public offense committed or attempted in his presence; or

(2) When a felony has been committed and he has reasonable cause to believe the person arrested has committed it.

7. For purposes of such analysis, it is routinely recognized that "deadly force" is force which is likely to cause death *or* serious bodily injury. *See, e.g., Etheredge v. District of Columbia,* 635 A.2d 908, 916 n. 9 (D.C.1993); *Commonwealth v. Klein,* 372 Mass. 823, 363 N.E.2d 1313, 1316 (1977); *Holmes v. State,* 830 S.W.2d 263, 265 (Tex.App.1992).

888

foregoing, there was sufficient evidence introduced at trial on which a jury could reasonably find that defendant committed acts that "create[d] a substantial risk of bodily injury," Utah Code Ann. § 76–5–102(1)(c) (1995), to Bridger and Gary Kummer and that in doing so he used a "dangerous weapon." *Id.* § 76–5–103(1)(b).

## CONCLUSION

Because, inter alia, defendant admitted to actually firing his gun twice, there was no rational basis for a verdict acquitting him of aggravated assault and convicting him of threatening with a dangerous weapon. Moreover, by finding defendant guilty of aggravated assault, the jury necessarily concluded that defendant had used deadly force. Accordingly, the jury could not properly have found that defendant had made a lawful citizen's arrest and any error in refusing to instruct the jury on citizen's arrest was harmless. Finally, there was sufficient evidence presented by the State to support defendant's conviction on two counts of aggravated assault.

Accordingly, defendant's convictions are affirmed.

GREENWOOD and WILKINS, JJ.