**2013 UT App 112**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
*Plaintiff and Appellee,*
*v.*
DALE EDWARD REYNOLDS,
*Defendant and Appellant.*

Memorandum Decision
No. 20110880-CA
Filed May 2, 2013

Fourth District, Provo Department
The Honorable Fred D. Howard
No. 111400112

Margaret P. Lindsay and Douglas J. Thompson,
Attorneys for Appellant
John E. Swallow and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES JAMES Z. DAVIS and J. FREDERIC VOROS JR.
concurred.

ROTH, Judge:

¶1 Defendant Dale Edward Reynolds appeals his conviction for aggravated robbery, *see* Utah Code Ann. § 76-6-302(1)(a) (LexisNexis 2012), challenging the trial court's decision not to instruct the jury on the lesser included offenses of retail theft, *see id*.

§ 76-6-602(1), and aggravated assault, *see id.* § 76-5-103(1)(a).[1] We affirm.

¶2    After observing Reynolds acting suspiciously, the loss prevention manager of a Kmart in Orem saw Reynolds run out of an emergency exit without paying for the merchandise he was carrying. The employee followed Reynolds out of the store and called out to him to stop. The employee then chased Reynolds as he ran across a small parking and loading area then off the store's property and across an adjacent street. As he crossed the street, Reynolds was approximately one hundred feet away from where he had exited the store, and the employee was about twenty feet behind him. At that point, the pursuit had lasted less than ten seconds. Reynolds then pulled out a gun, pointed it at the employee, and said, "I'll fucking kill you." The employee stopped his pursuit, and Reynolds fled.

¶3    Reynolds was later detained and charged with aggravated robbery, among other things. At trial, Reynolds requested that the court instruct the jury on the lesser included offenses of retail theft and aggravated assault. The trial court declined to do so on the basis that the evidence did not support the lesser included offenses. The jury convicted Reynolds of aggravated robbery. On appeal, Reynolds claims that the trial court abused its discretion in refusing to instruct the jury on the lesser included offenses. *See generally State v. Berriel*, 2013 UT 19, ¶¶ 8–9 (explaining that a district court's refusal to give a jury instruction is reviewed for an abuse of discretion, though the precise amount of deference afforded on review depends on the type of issue presented, and a factual determination, such as whether the evidence supports a defendant's theory of the case and entitles him to a particular instruction, is given more deference than a determination that is more legal in nature).

---

1. Because the relevant statutory provisions are substantively unchanged, we cite the current version of the Utah Code.

¶4    To be entitled to a jury instruction for a lesser included offense, "a defendant must show (1) that the charged offense and the lesser included offense have overlapping statutory elements and (2) that the evidence 'provides a rational basis for a verdict acquitting [him] of the offense charged and convicting him of the included offense.'" *State v. Powell*, 2007 UT 9, ¶ 24, 154 P.3d 788 (quoting *State v. Baker*, 671 P.2d 152, 159 (Utah 1983)); *accord* Utah Code Ann. § 76-1-402(4). The State does not dispute that retail theft and aggravated assault are lesser included offenses of aggravated robbery in this case. Therefore, the issue presented for review is whether the evidence provides a rational basis for acquitting Reynolds of aggravated robbery but convicting him of the lesser included offenses of retail theft and aggravated assault. In making this determination, the evidence presented at trial must be viewed "in the light most favorable to" Reynolds, *see Powell*, 2007 UT 9, ¶ 27, in order to determine if "there is a sufficient quantum of evidence presented to justify charging the jury with [the] . . . requested instruction[s]." *See State v. Velarde*, 734 P.2d 449, 451 (Utah 1986).

¶5    Under the circumstances of this case, in order to have committed aggravated robbery, Reynolds must have used a dangerous weapon—the gun—"in the course of committing robbery," Utah Code Ann. § 76-6-302(1)(a) (LexisNexis 2012); and to have committed robbery, Reynolds must have used "force or fear of immediate force against another in the course of committing a theft," *see id.* § 76-6-301(1)(b). In the context of the offenses of both robbery and aggravated robbery, an act is considered to be "'in the course of committing'" a theft or robbery if it occurs "in the immediate flight" from the commission of the underlying crime. *See id.* §§ 76-6-301(2)(c), -302(3). Until he drew the gun, the only crime Reynolds had committed was retail theft. *See generally id.* § 76-6-602(1) (defining the offense of retail theft). But once he used the gun, the character of the crime became more complicated: the general threat to use force itself potentially elevated the theft to robbery, *see id.* § 76-6-301(1)(b), and the use of a dangerous weapon—the gun—potentially elevated the robbery to aggravated robbery, *see id.* § 76-6-302(1)(a). However, if the gun was not used in the commission of the theft, its use to convey a threat would

amount to aggravated assault, *see id.* §§ 76-5-102(1)(b), -103(1)(a) (defining the offenses of assault and aggravated assault). So for the jury to convict Reynolds of aggravated robbery, it must have found that he used the gun to threaten the employee in the course of committing the retail theft, which includes the immediate flight from the commission of that crime.

¶6 Reynolds asserts that the jury could have found that the gun was not used "in the immediate flight" from a theft because the evidence presented at trial shows that he did not use the gun in the store or on store property but only when he was out of the store, off store property, and across an adjacent street. He therefore contends that there is a rational basis in the evidence for the jury to have acquitted him of aggravated robbery and, instead, to have convicted him of retail theft for taking the merchandise from the store without paying, *see id.* § 76-6-602(1), and aggravated assault, for threatening the employee with a gun, *see id.* § 76-5-103(1)(a). We conclude, however, that the trial court acted within its discretion in determining that there is no rational basis in the evidence for the jury to have found that Reynolds did not use the gun in the immediate flight from the commission of the theft.

¶7 When Reynolds threatened the employee with the gun, he had barely left the business premises and was only a little over one hundred feet from the store, a distance he had covered in less than ten seconds. The employee had pursued Reynolds from the time he exited the store, and his pursuit was interrupted only when Reynolds drew a gun and uttered his threat to kill. Reynolds has provided no authority for his proposition that the line between "immediate flight" from the crime and some other event after the commission of the crime that is no longer "in the course of" a retail theft is drawn at the point where the thief crosses the retail store's property line, and we see no logical basis for such a distinction. Because Reynolds's use of the gun came at the end of an uninterrupted, seconds-long foot pursuit that ended only a stone's throw from the site of the theft, there is no rational basis for instructing the jury on the lesser included offenses Reynolds

requested.[2] These facts are simply not "ambiguous or susceptible to alternative interpretations which would make it possible for the jury to acquit" Reynolds of aggravated robbery and convict him instead of retail theft and aggravated assault. *See Velarde*, 734 P.2d at 453. We therefore conclude that the trial court did not abuse its discretion in denying Reynolds's request to instruct the jury on lesser included offenses.

¶8      We affirm.

───────────

───────────────────────────────

2. The parties have not presented any Utah case addressing the meaning of "immediate flight" in this statutory context. But in the context of felony murder, one commentator has noted that flight is considered "sufficiently immediate" if there has "been no break in the chain of events, as to which the most important consideration is whether the fleeing [person] has reached a place of temporary safety." 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.5 (2d ed. 2012 ) (footnote citations and internal quotation marks omitted); *see also State v. Archuleta*, 850 P.2d 1232, 1244–45 (Utah 1993) (reasoning that, in the context of felony murder, the phrase "in the commission of," like the phrase "while committing," "denotes a continuing chain of events" that indicates a "close proximity in terms of time and distance" with "no break in the chain of events" (citation and internal quotation marks omitted)).

Although we do not decide whether such a standard ought to be adopted in determining whether a particular event takes place in the course of "immediate flight" after the commission of a crime, it is clear that when Reynolds threatened the employee with the gun, there had been no break in the chain of events and Reynolds had not reached a place of temporary safety. *See, e.g., State v. Phillips*, 2006 UT App 211U, para. 4 (per curiam) (concluding that there was sufficient evidence to support a conviction for aggravated robbery where the defendant had used fear or force in the immediate flight after a retail theft when he had displayed a knife during an attempt to escape the commission of the crime).